# JOSEPH F. FRANKLIN vs. THE BANK OF MISSOURI.

## APPEAL FROM ST. LOUIS COURT COMMON PLEAS.

### STATEMENT OF THE CASE.

The appellant, Franklin, commenced his suit by attachment against Smith in the court below, as surviving partner of Colburn and Smith, and caused the bank to be summoned as garnishee. The cause progressed against Smith, the defendant, in the original suit, against whom judgment was finally rendered for $2842 78. In proper time the plaintiff filed allegations and interrogatories against the bank as garnishee in the usual form, and alleged as the ground on which the garnishee was required to answer: that when said garnishee was summoned, the defendant Smith, as surviving partner of the firm of Colburn & Smith, was the lawful holder and owner, as said garnishee well knew and was advised of, a check or draft upon said bank for $3000, drawn by some paymaster in the army of the United States, in favor of said firm of Colburn & Smith, and to meet which draft, funds had been provided by the government, and were then on deposit with said bank to be applied to the payment of said draft; and further that Smith, surviving partner as aforesaid, was as the said garnishee, very well knew the lawful owner of and entitled to the possession of sundry checks upon the said bank, drawn by paymasters in the army of the United States, at Santa Fe, amounting in the whole to the sum of about $2390, most of which were payable to bearer, and those not so payable, were endorsed in blank by the respective payees, which checks belonged to the firm of Colburn & Smith at the time of the death of said Colburn, and when the said garnishee was summoned, the said checks belonged to and were the lawful property of the said Smith, survivor as aforesaid, as the said bank well knew at the time when said garnishee was summoned. The government had on deposit with said bank, applicable to said checks, funds and money sufficient to pay the same, and has ever since had and now has The bank, in her answer, puts in a general denial to the interrogatories, but is entirely silent as to the special grounds alleged by the plaintiff for causing her to be summoned as garnishee. The plaintiff filed a general traverse of the answer, and the cause was submitted to the court sitting as a jury. The court found the issue in favor of the garnishee; whereupon the plaintiff, within the proper time, filed a motion and the usual reasons for a new trial, which was overruled by the court, and the plaintiff excepted and appealed to this court. The bill of exceptions shows that the plaintiff introduced proof tending to show that prior to the time when the garnishee was summoned, the firm of Colburn and Smith, residing at Santa Fe, were the lawful holders and owners of a bill of exchange for $3000, dated 31st December, 1846, drawn by Maj. Walker, a paymaster in the army of the United States, in his official capacity, upon the said bank, payable at sight, to the order of Maj. Spalding, by him endorsed to Lieut. Garnier, and by the latter to Colburn & Smith. That Colburn, one of said firm, in coming from Santa Fe to St. Louis in the spring of 1847, was murdered on the plains, having before his death dispatched a messenger with his money and effects, and amongst others the bill in question, to Independence in this State. That on the arrival of the messenger at Independence, he placed the effects in the hands of John Lewis, of Independence, who claiming that Colburn & Smith were largely indebted to him, went to St. Louis, the place of business of the bank, taking with him the bill of exchange in question, which he presented to the cashier of the bank, as also to the president and directors, and demanded payment of said draft, which was refused on the ground that it was not endorsed by Colburn & Smith, and therefore they had no authority to pay it to Lewis. It was also proved that the bank then had on deposit funds of the

government of the United States, subject to draft, to cover this bill, and that when Lewis presented the bill, the bank officers took a memorandum of it. That Maj. Walker, the drawer of the bill, had authority to draw it, and payment to Lewis was not refused because there were no funds to meet it to the credit of the government, but only for the reason that the bank did not consider that Lewis had authority to receive the money. It was also proved by the cashier of the bank that it has always been the custom of the bank to pay government drafts, whether the government had funds on deposit to meet them or not; that payment had never been refused of a government draft, because of a want of funds deposited to meet it, but that when the bill in question was presented for payment by Lewis, there was in point of fact on deposit with the bank, funds belonging to the government, subject to the draft of its disbursing officers, sufficient to cover this draft. Evidence was also given tending to prove that when the bank refused payment to Lewis, he took the draft back with him to Independence, and retained it in his possession until said garnishee was summoned. That the defendant Smith, who was surviving partner of Colburn & Smith, was at Santa Fe, New Mexico, his place of residence, whilst these transactions took place; that he left Santa Fe for St. Louis, Mo., on the 4th or 5th of July, 1847 ; that on his arrival at Independence, after the garnishee was commenced, Smith settled with Lewis, and obtained from him the draft in question, which he brought with him to St. Louis. That the firm of Colburn & Smith being indebted to the late firm of Powell & Wilson, Smith on his arrival at St. Louis, about the middle of August, 1847, endorsed the bill as surviving partner of Colburn & Smith, to George DeBarm, the clerk of Powell & Wilson, who had no interest therein, but took it only for collection; that on the same day DeBarm presented the bill, thus endorsed, at the bank for payment, and it was then paid to him ; that Smith when he endorsed it, handed the bill to Wilson, of the firm of Powell & Wilson, and directed him to receive the proceeds, and out of it to retain certain debts due from Colburn & Smith to Powell & Wilson, and to pay the remainder to Jeffries and other creditors of Colburn & Smith, which was done. This was all the evidence in the cause.

The plaintiff then moved the court to declare the law of the case to be as follows:

1st. That if before the garnishee was summoned in this cause, there was deposited with said garnishee by Maj. Walker, a paymaster of the United States army, money belonging to the government of the United States, subject to his check as paymaster aforesaid, and which by agreement, or by the usual course of dealing between the garnishee and said paymasters, was to be checked out by said paymaster in such sums as he might see fit from time to time, and if said paymaster before said garnishee was summoned, drew his check or draft upon said garnishee for three thousand dollars, which by regular endorsement of the payee was transferred and delivered to Colburn & Smith, of which firm the defendant Smith was a partner, and if Colburn departed this life leaving the defendant Smith his only surviving partner of said firm, and if after Colburn's death, and before said garnishee was summoned, and whilst said check or draft was held by said Smith as surviving partner as aforesaid, under the endorsements aforesaid, and whilst there was enough of said fund remaining on deposit as aforesaid, with said garnishee to pay and satisfy said draft, the said check or draft was presented at said bank to its cashier, and he saw and examined the same, and was informed that the same belonged to and was the property of said defendant Smith, as surviving partner as aforesaid, and if the said cashier then and there refused payment thereof only on the ground that said check was not then endorsed by said Colburn & Smith, or by said Smith as surviving partner; and if the said garnishee was summoned before the said Smith had endorsed or transferred the said check, and whilst the same was the property of said Smith as surviving partner as aforesaid, then the plaintiff is entitled to recover.

2nd. That the drawing of the check by Maj. Walker upon funds then on deposit, to his credit with the garnishee, was in contemplation of law an assignment of so much of said fund to the payee, or any subsequent endorsee of said check under the facts as proved, and when the garnishee was notified of said check, and that the same was regularly endorsed to, and,

was the property of said defendant as surviving partner, the said assignment became completed and the defendant Smith thereby acquired an equitable lien on said fund to the amount of said check, and if whilst said equitable lien existed, and whilst said check was still the property of said defendant Smith, and whilst the fund remained in the hands of the garnishee, the said garnishee was summoned in this action, then the plaintiff is entitled to recover.

3d. That if from the custom of trade or the course of dealing between the garnishee and Maj. Walker, and other disbursing agents of the government of the United States, it was usual and customary for the garnishee to honor all checks and drafts drawn by said disbursing agents for whatever amounts, and whether funds had been provided by the government to meet the same or not, then an obligation on the part of said garnishee to accept drafts drawn by said agents on said garnishee may be fairly implied as a part of their contract. All of which instructions were refused by the court and exceptions taken by the plaintiff. The court at the instance of the garnishee, then declared the law to be as follows:

1st. The garnishee moves the court to instruct the jury that from the evidence the said plaintiff has no right of action in this proceeding against said garnishee.

2d. That the refusal of the bank to pay said check gives no right of action against the bank in favor of the holder or owner of said check, unless the bank accepted the same in favor of said holder or owner.

3d. That the mere refusal of the bank to pay said checks, or the payment of said checks to a person not authorised to receive the money, does not make the bank the debtor of the holder or owner of said checks.

4th. That the mere refusal of the bank to pay a check to the owner or holder thereof, even though the bank may have at the time sufficient funds of the drawer of said check to pay the same, gives no right of action against the bank in favor of the holder or owner of said check.

5th. The drawer of a check or draft is not liable to any action on the part of the payee for refusing to pay or honor such check or draft, unless the drawee has accepted the same or agreed to accept the same.

To all which the plaintiff objected and excepted at the time. The court having rendered judgment for the garnishee, and refused to grant a new trial to the plaintiff, he has brought the case to this court by appeal, and assigns for error,

1st. The refusal of the court to grant him a new trial. 2d. The refusal of the plaintiff's instructions. 3d. The giving of the garnishee's instructions. 4th. That the verdict and judgment ought to have been for the plaintiff.

## S. M. BAY, for appellee.

1. The drawing of a check on a bank is not an assignment of the amount for which it was drawn to the bearer. 1st. John. vs. Homans, 8 Mo. R. 386; Mandeville vs. Welch, 5 Wheaton, 286. The doctrine that counts of law will take notice of and protect equitable assignees of choses in action, is not applicable to instruments of this class which are governed by the law applicable to bills of exchange.

2. There is no privity of contract between the holder of a bill or check and the drawer, until acceptance or a promise to pay or accept. There is, it is true, an implied contract between the drawer and the drawee, and also between the drawer and the holder. But it is presumed the holder could not avail himself of these implied contracts, as against the drawee, except under peculiar circumstances, and then only through the medium of a court of equity. Story on Bills of Ex., sect. 338, and note to same, sect. do. sect. 13, do. sect. 489.

3. The check was endorsed by Smith, and negotiated to the person who received the money after the bank was garnisheed. If this transfer was valid, the bank was bound to pay the

---

WILLIAM ROBINSON vs. THE STATE OF MISSOURI.

---

check to the holder. To hold the transfer invalid would be repugnant to the law governing instruments of this class, and would in effect destroy their negotiable quality.

4. There is no positive evidence that the drawer of the check had in bank, at the time the check was drawn, or at any subsequent period, funds placed there to meet the check. The fact that the bank, as a matter of courtesy, honored the drafts of public officers, whether they had funds in the bank or not, could not impose any legal obligation on her to pay the check.

Judge NAPTON delivered the opinion of the court.

This case involves the same question determined in Janny & Wilson vs. The Bank of Missouri.

Judgment affirmed.